The court will proceed to the third case, Lewis v. McDonald. Mr. McDonald. Good morning, your honors. May it please the court, Shannon McDonald here for argument on behalf of the appellant, Plaintiff Jerry Lewis. Your honors, this case is a Title VII retaliation case arising out of the Eastern District of Wisconsin. The plaintiff involved in this case was a cook with the Department of Veterans Affairs. He first became employed with the Veterans Affairs in 2008. In 2009, he was terminated. He had filed an EEO action, and four years later, in 2013, received a favorable decision from an administrative law judge, finding that he had, in fact, been retaliated against by his first-line supervisor, Schmidt, second-line supervisor, Robluski. The ALJ ordered that he be reinstated to his position. What was the basis for that initial finding? The initial finding was that the Robluski and Schmidt had retaliated against him because he had sought EEO protection from a co-worker, Jason Borgward, for harassing him based upon his race. Which is? African American. Okay. And so, upon being reinstated in December of 2013, Mr. Lewis then began receiving detrimental treatment by the agency. He was again reporting to first-line supervisor Schmidt, second-line supervisor Robluski, and again working with the same individual, Jason Borgward, from whom he sought protection during his earlier EEO activity. Was that an adverse action? Excuse me? Was that an adverse action, putting him back in the same place? Absolutely not. No. We are not claiming that that is an adverse action. After he had been reinstated to his position, Robluski and Borgward began subjecting Mr. Lewis to different terms and conditions of employment. Robluski had directed Borgward to go to Mr. Lewis's co-workers and solicit only negative information about him and only about him, no other co-workers. Now, there's contradicting testimony between Mr. Schmidt, Ms. Robluski, and Mr. Borgward on this directive. Ms. Robluski denies ever giving that order. Mr. Borgward has testified under oath repeatedly that Ms. Robluski did, in fact, give that order, and he did, in fact, go to these other employees over a period of 30 days after Mr. Lewis had been reinstated to, again, solicit only negative information, only about Mr. Lewis. And that is one of the primary bases that we consider to be a retaliatory action. Another primary focus of retaliatory action is Mr. Lewis's first-line supervisor, Mr. Schmidt, when meeting with Mr. Lewis would require a witness to be present. During the EEO hearing for his first action, Mr. Schmidt admitted under oath that the only reason he was requiring a witness to be present for meeting with Mr. Lewis is because of his prior EEO activity, no other reason. The agency had filed a motion for a summary judgment. The court granted that motion, and the reason we believe that the court erred in this regard is we believe the court applied the incorrect standard. In its decision on pages 34, 35, and 36, the court refers to the retaliatory action, the adverse action, as requiring that it be related to employment, an adverse employment action. And that is not the correct legal standard for Title VII retaliation. Under Title VII retaliation, what is required is that Mr. Lewis presents sufficient facts to show that a reasonable co-worker would have been likely dissuaded from making or supporting a charge of discrimination because of the agency's conduct. While the district court referenced that standard in its opening explanation of the applicable law, when it actually got to the analysis and application, the court again four times referred to adverse employment action. This court has repeatedly held that as far as a current employee being subject to retaliatory actions, those actions need not relate to employment. Those actions can be above and beyond employment, as in the Volpinski case, which cited if there are numerous threats giving rise to harassment, that could be an adverse action. If there is a threat of force, that could be an adverse action for, again, Title VII retaliation. That is not the same case for Title VII discrimination, hostile work environment. And again, it appears from the court's ruling that they applied the Title VII discrimination and hostile work environment standard as opposed to the retaliation standard. But what is the consequence of this retaliation, each incident of it, I guess? Certainly. And Mr. Lewis, as is in the record, because of each instance of retaliatory conduct, he felt various forms of anxiety, depression, fear for his job. Again, we have to remember, just four years earlier, he had gone through the exact same scenario with the exact same people. Wroblewski, Schmidt, and Borg were where he's terminated for these things. Now he's reinstated and he's seen the exact same conduct reoccur. And also, I think it's important to remember that Borgwart, his co-worker, upon Mr. Lewis being reinstated, was very, very vocal about his disdain for Mr. Lewis and how he had, quote, unquote, worked the system in Mr. Lewis getting his job back through the legal system. What did he actually do? Is he a cook? That's correct. Mr. Lewis was a cook, as was Mr. Borgwart. So I assume he's confined to the kitchen, or wherever you cook. To the kitchen, and some duties require them to bring food to rooms, but generally in the kitchen, yes. But the point is that I guess he really doesn't like working there because of the people he's working with. That is true. And Mr. Lewis, during this period of time after reinstatement, requested a transfer on multiple occasions. Do they have other facilities where there's different restaurants or something? Well, not so much different restaurants, but different jobs he was qualified for, outside of being a cook. So he was qualified for these positions. He requested transfers. The agency didn't transfer him for a long time. He finally did obtain a transfer in April of 2015 and got out of that department because of what he was experiencing, the retaliatory conduct. Well, what kind of a job was he transferred into, ultimately? Ultimately, I believe he was transferred into a role where he was assisting patients, pushing them back and forth, whether they were wheelchair-bound or crutches. He was assisting in that nature. Okay. Is this a nursing home type of place? This is a hospital. This is the Veterans Administration in Milwaukee, Wisconsin that performs. Okay. I get confused when you talk about a VA. It's a VA hospital. That is correct. Okay. That is correct. And so, Your Honors, at the end of the day, based on the undisputed evidence, we believe there was ample undisputed facts to show that a likely, I'm sorry, that a reasonable co-worker likely would have been dissuaded from engaging in statutorily protected activity based on what Mr. Lewis suffered at the hands of Wroblewski, Borgwart, and Schmidt. The court then went on to analyze this case with respect to a causal nexus, indicating, first of all, that since Mr. Lewis allegedly had not met his burden to establish an adverse action, they didn't need to get to the next prong, which was the causal nexus. But going further than that, the court indicated that Mr. Lewis assumed that because he experienced this fear, anxiety, all these things coming as a result of the retaliatory action, that that didn't establish a causal connection. But what the facts show is that this is the only reason for these individuals taking this action. They had no business purpose for doing what they did. They had no business purpose for Wroblewski directing Borgwart to solicit this negative information about Mr. Lewis only. The agency has tried to paint that in terms of training, that it was for training purposes. There's two big problems with that. First of all, the ALJ, in the first case, ordered that Mr. Lewis be provided with a mentor and training for six months. So there was no reason for Wroblewski and Borgwart to be engaged in that activity. Secondly, and most importantly, Wroblewski denies ever even giving that directive, notwithstanding the fact that Borgwart has testified under oath repeatedly that, yes, she did in fact give that directive, and the coworkers have given testimony saying, Borgwart came to us to solicit this information. So if Wroblewski is absolutely unequivocally denying that it ever happened, there cannot be a legitimate business purpose for taking that action, and thus the only possible explanation as to why it had occurred was because of Mr. Lewis's prior EEO activity. Mr. Borgwart didn't like Mr. Lewis because of that. Mr. Borgwart was very vocal about, again, about Mr. Lewis working the system with his EEO complaint and getting reinstatement, and ultimately Mr. Lewis had suffered the retaliatory actions upon being reinstated. And I see I'm close to five minutes, so I'd like to reserve the rest of that time. Thank you. Thank you, Mr. McDonald. Ms. Jones? Good morning. Assistant U.S. Attorney Lisa Yoon for the Eastern District of Wisconsin, representing the Secretary of Veterans Affairs in this appeal. May it please the Court. This is a straightforward case. In district court, Jerry Lee Lewis failed to show that his 2009 EEO complaint caused an adverse retaliatory action in 2014, whether under the direct method or the indirect method. Adverse action is a term of art. It does not mean anything bad that happens to an employee, and this is apparent in the Title VII legal landscape. A hostile work environment claim does not require an adverse action, but obviously bad things happen to employees in a hostile work environment, and Lewis did not bring a hostile work environment claim. Lewis is the one who misapprehends the Title VII standard. It is clear from the district court's order that Judge Pepper relied on the correct standard. The standard is not whether a co-worker observing conduct involving the claimant would be dissuaded from engaging in protective activity. We heard just now the same phrase used, quote, a reasonable co-worker observing activity. And this incorrect standard of co-worker observing conduct is set forth in Lewis four times in Section 2C of his brief alone. The correct Title VII standard considers the effect on the claimant, not the observation of co-workers. I don't think so. It's an objective test. It is an objective test. That is correct. So the effect on the claimant is irrelevant. Well, in Burlington Northern, the Supreme Court held that an adverse retaliatory action is one that a reasonable employee would find to be materially adverse, such that the employee himself or herself would be dissuaded from engaging in protective activity. Objective test. It's an objective test, absolutely. The subjective effect on the claimant is irrelevant. Exactly. So the argument, it really is two different arguments that I'm trying to make here, which is, one, it is an objective test, so the personal feelings of individual employees don't matter. But we are looking in the objective test at the claimant himself, the person experiencing the alleged improper conduct. In terms of Burlington Northern and the various tests that they were addressing in that case, the court put the circuit split kind of in three different sections. So on the most restrictive end was that the adverse action had to be a term or condition of employment. And the middle ground is what Seventh Circuit actually previously already adhered to, which is exactly what I recited, and it's the employee's perspective. But it is an objective test, absolutely. And then the third one is what the Ninth Circuit had previously adhered to, which is a co-worker observing conduct from the outside. And the reason why this is important is because this court has shown that, or has held that, it is easier to deter altruistic action from a co-worker observing conduct. But yes, the test in this circuit is that it's an objective test. So the personal feelings of individual employees do not matter. Subjective feelings do not matter. And so an employee who is particularly sensitive to employer's slights receives no greater protection than one who is able to shrug them off. And this raises an argument, the issue raised by Lewis, about not relating to an adverse action, not having to relate to an employee's job, so it doesn't have to be an employment action, as well as the role of context. And these are actually both red herrings because they don't affect the fact that the test is an objective one. So stress, anxiety, those types of emotions do not rise to the level of adverse action under an objective test. Now, there are examples in the case cited by both parties here with respect to the proposition that adverse action is not required to relate to an employee's job that can crystallize the issue. So examples of retaliation, actionable retaliation not relating to employment, include the refusal contrary to policy to investigate death threats, an employer filing criminal charges, threats of violence, blackballing among prospective employers, shooting someone, actions that make it more difficult for an employee to procure future employment, and falsely accusing an employee of engaging in criminal activity. So all these examples have been set forth by the parties in cases cited by the parties of actionable retaliation not relating to employment. None of these cases state that or support the proposition that anxiety, stress, and the like are actionable under Title VII. Well, this guy, obviously, I find the picture is, I don't know whether it's this kitchen where you cook or do whatever he's doing every day, going out to work. He's working with people he doesn't like. They haven't treated him well, and they're doing other irritating things. And so if we say, well, adverse action, objective test, I'm just not sure what, I don't know what his, any way out. I know the judge went through what, 11 issues? Yes, Your Honor, 11 issues. Yeah, and I don't know what those, and in each one she determined wasn't a deciding factor, I guess. Yes, so, and I think this comes back to the fact that this is not a hostile work environment claim. So in a hostile work environment claim, which requires severe and pervasive conduct, severe or pervasive conduct, the courts view that in a totality of the circumstances approach. That is not the case for adverse action. We really need to look at each incident, all 11 incidents, by themselves and determine whether there was an adverse action. And one way of looking at that is to think about if there was, how did Lewis' situation change before and after each incident? The answer really is it didn't change in an objective way. His alleged harm is stress, anxiety, and like, which has been held time and time again, is not sufficient and does not rise to the level of a Title VII retaliatory action. Would an objective test be one that someone else would be okay with the environment that he's complaining about? An objective test is one where there is some concrete harm to the employee. And, I mean, the case law, and it's set in the government's brief, states that an employee who's particularly sensitive to employer sites receives no greater protection. And so for an action, and again, we're looking at them individually, to rise to the level of a Title VII adverse retaliatory action, it has to be extremely severe. And none of these incidents, none of the 11 incidents by themselves, are really taken together, are objectively severe. Well, is it that he's overreacting to conditions that other people might just kind of shrug off? Yes, Your Honor. This is the exact type of reasoning in case law that the courts seek to avoid. To try to put, to decide whether or not someone's reasonable in something, it needs to be an objective, and the reasonableness standard comes up in many different types of case law. But the point is not to have to decide whether or not someone is reacting too extreme to an action. And so stress, anxiety, and concern about disciplinary action are just simply not enough. The provision that retaliation does not need to relate to employment doesn't create a loophole for actions that are not material or significant. And in Burlington Northern, as well as case law in this circuit, it's been held time and time again that materiality is implicit in the word discriminate. And going back to your question about what is sufficient, it is concrete injury or harm. So mere inconvenience or alteration of job responsibilities, commonplace management decisions, petty slights and the like, isolated offensive incidents, and ordinary tribulations of a workplace, including the sporadic use of abusive language. And that is in Burlington Northern. So going back to another red herring that was raised is that we need to take into the context, take into account the fact that Lewis was placed back in this position with his former coworkers, which was also actually what was ordered by the ALJ. He had to be put back in the same position. And the ground for that was in the previous case, the ALJ had found Lewis prevailed on his claim of reprisal only, not his other claims of discrimination or anything like that. And in Burlington Northern, in the same sentence even, the Supreme Court states that the test is objective, but context and circumstances matter. But the fact that context and circumstances matter doesn't negate the objectivity test. So, and this is again illuminated by examples, and these are examples cited by both parties in this case. A young mother with school-age children whose schedule has changed. A parent whose disabled son is reliant on a particular schedule. Excluding an employee from a weekly training lunch that can contribute significantly to professional advancement, as opposed to lunch, which is deemed trivial. So the significance of an act depends on circumstances, but subjective feelings like stress, anxiety, and concern about disciplinary actions are not enough. The broader reach of the anti-retaliation rule does not affect the significance and materiality requirement. So again, thinking about what is an adverse action, we can look at before and after each of the 11 actions, how Lewis' situation changed. It really didn't. But let's assume that he had shown injury sufficient to deter him, not a co-worker observing him, but deter him engaging in a protective activity. Then, causation becomes critical. To establish causation without a similarly situated employee, which Lewis has not identified, he must show that his protective activity was the but-for cause of each adverse action. And the only ground that Lewis puts forth is animosity. But animosity itself does not show causation. Who's animosity? Animosity of his supervisors, Schmidt and Robusti. He didn't like them either. You're correct. I believe Lewis did not like being reinstated in that position. Did he ask for a transfer early on? Or was there some... I'm not sure of the exact date, but yes, Lewis did ask for a transfer. Okay. And that took a while, I guess. I believe that... He did a good job. He's a cook, and now he's transporting patients. Yes, Your Honor. I believe that the transfer took place maybe a year or a year and a half after he was reinstated. But I can be corrected on that. There's no... Well, if the concern is, Your Honor, that there was no action taken to make his situation better, that's not correct looking at the incidents. For example, one of his allegations is that on his first day back on the floor, he asked for a locker and was not given a locker right away and had to wait. But he did receive a locker about six hours after he requested one. And the reason set forth by Lewis is because he went to the EO manager, the EO person, and complained, and then he got his locker. And there's instances of that. Who's the EO? Is that Equal Opportunity? Yes, Your Honor. My apologies. It is Equal Opportunity Office. So anyway, that's whom he complained to. Yes, Your Honor. Is that a supervisor or someone who just goes where there's a problem? My understanding is that it is an independent department or unit at the VA. Sort of like HR. Yes, kind of like HR, although they, I believe, have a separate HR department. Yeah, probably. And so he, for a lot of the 11 incidents, would go to the EO manager. And certainly he did not get that transfer right away. But they took action in other ways. Another incident that comes to mind to address your concern is when Schmidt, the allegations that Schmidt, one of the supervisors, changed Lewis's schedule. You can continue your thought. Changed Lewis's schedule, and then he worked that changed schedule and left early, and then was called in to me to discuss it. And Lewis, I believe, spoke with the EO manager, and the whole matter was dropped. And really, for all these incidents, there was no effect on the complainant and no adverse action taken. Other than no effect, other than his, whatever you want to call it, psychological reaction. Yes, Your Honor, that's correct. Not good enough. No, it is not enough. There's no case law that says that it is enough, and appellant cites no case law that says that it's sufficient. And if the court has no further questions, the government will rest on its brief and respectfully request that the court affirm the decision of the district court. Thank you, Ms. Young. Thank you. Mr. Young. Thank you. I'd like to just begin by referencing your question about the transfer. Mr. Lewis had requested a transfer very early on when he began experiencing what he considers to be retaliatory actions. Nothing. After his return. After his return. The agency did nothing. He requested multiple times, and then he was finally granted the opportunity to transfer in April 2015. He did complain repeatedly to the EEO program manager. His name is William Johnson. And as counsel indicated, it is a separate section from human resources. But the individual is there to hear complaints of discrimination, retaliation, any types of those issues are brought to him. And that's where Mr. Lewis went with those complaints. So he had a forum to complain. Some of them who listened to him outside the environment and whatever his complaints were did not, in that person's determination, amount to something that deserved a transfer or needed a transfer. Mr. Johnson, as the program manager, wouldn't have authority to transfer Mr. Lewis. He would have to go through the typical protocol through human resources department, which he did. But again, Mr. Johnson, the EEO program manager, was there to facilitate conversations regarding discrimination, harassment, retaliation in the workplace not to effectuate transfers. So there's a process here, and he went through it. Absolutely, Your Honor. And didn't work for a while. The agency did not transfer him, no. No, it did not. And so briefly, coming back to – I'm sorry, did you have a question? No. Okay. So briefly, coming back to the standard that was applied by the court, it's our position that the district court applied the incorrect standard requiring an adverse employment action, which is not required here. The proper standard, which has now been discussed a number of times, is whether the conduct would have dissuaded a reasonable worker, an objective person standard, from making or supporting a charge of discrimination. That's just the definition of what is materially adverse in this context. There is a requirement of a materially adverse job action. Certainly, Your Honor. And as the case Viprinsky points out, they list a number of other cases indicating what types of actions those might be. Extra employment, if you will. Again, threats amounting to some form of harassment have sufficed to satisfy that prong. Threats of violence, as we've discussed, satisfy that prong. We have nothing like that here. We don't have threats of violence, but what we submit to the court is that the second-line supervisor, direct supervisor, and former co-worker, their actions in conjunction in, again, over a period of 30 days, submitting Mr. Lewis to this regime of inquiry for and soliciting of only negative information. And this is all behind the scenes. Again, Wroblewski denies it. Borgore admits it. Schmidt admits it. The only purpose for that was to get Mr. Lewis out of that position. Again, Borgore was very vocal about his position on Mr. Lewis and him being reinstated to that position. He was very vocal about the EEO process and feeling it was unfair that Mr. Lewis had obtained reinstatement through the process. In addition, we have Mr. Schmidt, again, who had required witnesses be present for any meeting with Mr. Lewis only, and only because of Mr. Lewis's prior EEO activity, his protected activity. No other employees were subject to that type of scrutiny. Well, that doesn't really matter. The point is whether doing that is materially adverse, having a witness there. No reasonable jury could conclude that that is materially adverse or would deter a reasonable employee from complaining about harassment or discrimination. We would respectfully disagree with that. We believe a reasonable jury could conclude that, and in conjunction with, again, the 30 days of soliciting negative information about Mr. Lewis, as well as the other items that we have indicated. If there are no other questions from your honors, we respectfully request that the lower court's decision be reversed and remanded for further proceedings. Thank you. Thank you, Mr. McDonald. Thank you, John. Case is taken under advisement.